Matter of Myriam L. (2007 NY Slip Op 52147(U))

[*1]

Matter of Myriam L.

2007 NY Slip Op 52147(U) [17 Misc 3d 1125(A)]

Decided on November 9, 2007

Family Court, Kings County

Hamill, J.

Published by New York State Law Reporting Bureau
pursuant to Judiciary Law § 431.

As corrected in part through November 21, 2007; it
will not be published in the printed Official Reports.

Decided on November 9, 2007

Family Court, Kings County
In the Matter of Myriam
L., A Child under Eighteen Years of Age Alleged to be Abused by Sarah L., Issac L.,
Respondents
NA-13570/07

Jaimee Lynn Nelsen, Esq. for petitioner
Family Court Legal Services, Administration for Children's Services
330 Jay Street, 12th Floor
Brooklyn, New York 11201
Tanisha McKnight, Esq. as law guardian
Juvenile Rights Practice of the Legal Aid Society
111 Livingston Street, 8th Floor
Brooklyn, New York 11201
Walter Fields, Esq. for respondent Sarah L.
Lanser & Kubitschek
325 Broadway, Suite 201
New York, New York 10007
Steven S. London, Esq. for respondent Issac L.
44 Court Street, Suite 905
Brooklyn, New York 11201

Bryanne A. Hamill, J.
On August 31, 2007, the respondent mother, Sarah L., and respondent father, Issac L.
(hereinafter "respondent mother" and "respondent father") filed motions for summary judgment.
The respondents assert that the abuse petition should be dismissed, pursuant to CPLR R. 3212(b),
because the cause of action has no merit and no material issue of fact requiring a trial exists. The
respondents further argue that the petition should be dismissed, pursuant to Family Court Act
("FCA") §1051(c). The law guardian for Myriam has filed an affirmation in support of the
respondents' motion for summary judgment. The petitioner, the Administration for Children's
Services ("ACS"), has submitted an attorney affirmation only in opposition to dismissal.
On September 25, 2007, before oral argument, ACS withdrew its abuse petition against the
respondent father. After oral argument, this Court granted mother's motion for summary
judgment, dismissed the petition, and terminated ACS supervision. This written decision
incorporates this Court's analysis.
Background
ACS commenced this child
protective proceeding on June 8, 2007 with the filing of an abuse petition against both respondent
parents. The petition charges that Myriam's parents violated FCA §1012(e)(i) or (e)(ii), in
that they inflicted or allowed to be inflicted upon such child, physical injury by other than
accidental means which causes or creates a substantial risk of death, or serious or protracted
disfigurement, or protracted impairment of physical or emotional health or protracted loss or
impairment of the function of any bodily organ, or (ii) created or allowed to be created a
substantial risk of physical injury to such child by other than accidental means which would
likely cause death or serious or protracted disfigurement or protracted impairment of physical or
emotional health or protracted loss or the impairment of the function of any bodily organ.
The petition further alleges that Myriam L., born on October 23, 2006, was admitted to the
pediatric unit of NYU Medical Center on June 6, 2007 with a depressed skull fracture. Her
mother reported to the attending physician that Myriam fell off a bed and onto a hardwood floor
that day. The attending physician reported to an ACS caseworker that this explanation and time
frame was not consistent with the child' s injury as the absence of soft tissue swelling on the
child's skull, which would date the injury to three to five days old.
Upon the filing of the abuse petition and the recommendations of ACS and the law guardian,
this Court directed that Myriam remain removed from her parents' care and custody, remanded to
ACS, and ultimately, placed restrictively with her maternal grandparents. On July 20, 2007, her
mother filed a motion requesting the return of Myriam, pursuant to FCA §1028. On July
30, 2007, an agreement was reached between the parents, ACS and the law guardian to return
Myriam to her father's care and custody, under ACS supervision, on condition that both
respondents in the home cooperate with the Family Preservation Program (hereinafter "FPP") for
up to twenty hours a week. The Court held ACS accountable for reassessing and reporting the
need for FPP within six weeks.
On September 4, 2007, respondents filed motions for summary judgment, pursuant to [*2]CPLR R.3212(b), dismissing the petition because the cause of
action has no merit.[FN1]
Analysis
A parent is liable for abuse of
their child, pursuant to FCA §1012(e)(i) or (e)(ii), respectively, when either they inflict or
allow to be inflicted upon such child, physical injury by other than accidental means which
causes or creates a substantial risk of death, or serious or protracted disfigurement, or protracted
impairment of physical or emotional health or protracted loss or impairment of the function of
any bodily organ, or (ii) create or allows to be created a substantial risk of physical injury to such
child by other than accidental means which would likely cause death or serious or protracted
disfigurement or protracted impairment of physical or emotional health or protracted loss or the
impairment of the function of any bodily organ.
In this case, based upon the petition filed, ACS is relying upon FCA §1046 (a)(ii),
which states "proof of injuries sustained by a child or the condition of a child of such nature as
would ordinarily not be sustained or exist except by reason of the acts or omissions of the parent
or other person responsible for the care of such child shall be prima facie evidence of child abuse
or neglect, as the case may be, of the parent or other person legally responsible."
In support of her motion, the mother has submitted her affidavit, her counsel's affirmation,
and affirmations by eight physicians with copies of their curriculum vitae.[FN2] Each of these physicians are
specialists in pediatric medicine and/or neurology and/or child abuse, and essentially
corroborates her explanation that this infant's skull fracture was caused by an accident.
The mother annexed to her motion an affirmation by Dr. Walter J. Molofsky, who is the
chief of pediatric neurology at Beth Israel Medical Center, associate chairman of the neurology
department, and an associate professor of pediatric neurology at Albert Einstein College of
Medicine. Dr. Molofsky affirms, under penalty of perjury, that in his expert opinion to a
reasonable degree of medical certainty, after a review of the family history, a detailed history of
the events, a review of the emergency room and hospital records from NYU, including the CT
and MRI, that the reasonable explanation presented by Myriam's parents as to how her skull
fracture was sustained, ie. falling off the bed onto the hard wood floor, is consistent, entirely
plausible, and the most probable explanation for what happened to this infant. Dr. Molofsky
states in his consultation report, which he affirms the contents to be true, that there are numerous
case reports of infants who have sustained skull fractures from falls from low heights without
adjacent soft tissue swelling. He refers to an article entitledHow Important is Scalp Soft
Tissue Injury as a Predictor of Skull Fracture, by Ashis Banerjee, published in the Journal of
the Royal Society of Medicine, Volume 84, August 1991, which cites to a study of twenty-one
[*3]children with skull fractures and eleven of the children had no
soft tissue injury. He also notes that Myriam saw her pediatrician, Dr. Feldman, six days prior to
her hospitalization, with no injuries.
Dr. Molofsky further discusses whether an infant can sustain a depressed skull fracture from
a fall from such a short distance. He refers to an article entitled Infants with Isolated Skull
Fractures, What are their Clinical Characteristics and Did they Require Hospitalization, by
David S. Greenes, M.D. and Sara Schutman, M.D., which appeared in the Annals of Emergency
Medicine, September 1997. This article notes that many investigators have found that infants
younger than two years of age are especially at high risk for skull fractures and intra cranial
injuries even in cases of minor head trauma. In their results, they noted that in one group of
patients that many of these falls involved short distances. In fact, thirty percent fell from heights
less than three feet. Seventeen of the eighteen subjects who reportedly fell from a height of less
than three feet were younger than one year of age. Further it was noted that six of the subjects
with depressed skull fractures were among twelve children who fell less than 3 feet. 
Another case report cited by Dr. Molofsky is entitledDepressed Skull Fracture in a
7-Month-Old Child who Fell from the Bed, which appeared in Pediatrics 1997, Vol. 100 pgs
1033-1034, in which the report describes a factually similiar situation, where a 7-month-old
infant fell off a bed with no evidence of external trauma, except for a 2 x 4 x 0.5 cm depressed
skull fracture in the right parietal region. None of these reported cases was inflicted trauma; all
were accidental.
Dr. Ira Richmond Abbott, professor of clinical neurosurgery and pediatric neurosurgery at
Albert Einstein College of Medicine, states in his affirmation, dated August 31, 2007, that he
examined Myriam on June 26, 2007 and the following: "I can find no evidence to support a
conclusion that Myriam's injury is due to child abuse. The normal retinal exam does not support
the conclusion that the depressed skull fracture is due to a blow with force. Multiple long bone
fractures of different dates have not been established. I do not find any inconsistencies in the
history of this child's injury. The history given to me appears to be the same as that given to the
other physicians and the fall described certainly could account for the injuries seen. Further, there
are reports in the literature of such falls resulting in similar injuries with lack of injury to the
overlying scalp and a depression such as seen in Myriam."
Myriam's pediatrician, Dr. Saul Feldman, submitted an affirmation stating the following: He
has been Myriam's pediatrician since her birth. On June 6, 2007, Myriam's mother brought her to
see him, with a depressed skull fracture. She told him that Myriam fell off a bed, and he referred
her to the hospital. Myriam's parents have always been conscientious about Myriam's health and
would always bring her to see him for basic concerns, such as a cough or crying before bed.
Myriam is always brought for her well child care visits, and at no time in the nineteen visits that
he has examined the child, was there any evidence of trauma. Dr. Feldman finds it
incomprehensible that this episode could be due to abuse by her parents.
Additional affirmations were submitted by Dr. Stephen Ajl, medical director of the Brooklyn
Child Advocacy Center; Dr. Mark Mittler, pediatric neurological surgeon and clinical assistant
professor of neurosurgery at New York University School of Medicine; Dr. Michael Frogel, chief
of general pediatrics at Schneider Children's Hospital; Dr. Murray Engel, pediatric neurologist
and supervisor of pediatric neurology at New York Presbyterian/Weil Cornell Hospital; and Dr.
Linda Heier, section chief neuroradiology and professor of clinical radiology at [*4]Weill Cornell Medical School of Cornell University. Each and
every physician corroborates the findings and conclusions of Dr. Molofsky and Dr. Abbott that
Myriam's head injury was consistent with her mother's explanation that she had a short fall from
a bed onto a hardwood floor, and that the absence of soft tissue injury does not, in and of itself,
indicate that this fracture did not occur on the date as the mother reported. Further, the findings
by the physicians demonstrate that there was no signs or evidence of inflicted trauma. The
version of the events the parents told the emergency room physician and the ACS caseworker is
the same version throughout, ie. Myriam's mother was changing her on the bed and when she
turned to get a new diaper, the child fell off the bed and hit her head on a hard wood floor,
whereupon her mother noticed a depression in the child's skull and immediately went to her
doctor, who then referred her to the hospital. The extensive documentary evidence submitted by
this mother fully supports this conclusion.
With respect to case law regarding fractures in abuse cases, in Brandyn P., 278 AD2d
533 (3rd Dept. 2000), the trial court accepted the respondent's explanation that the child's injury
occurred accidentally. The Appellate Division affirmed, and held that the evidence supported a
finding that the spiral fracture of a one-year-old infant's leg was caused by an accidental fall
rather than abuse. The Court found that although a spiral fracture may be compatible with a
finding of abuse, standing alone it does not compel a finding of abuse (see, Matter of
Anthony YY. 202 AD2d 740(3rd Dept. 1994). "In cases involving such a fracture where
abuse is established, there have been other physical manifestations of abuse such as marks,
bruises or other fractures (Matter of NYC Dept. of Social Services v. Carmen J. 209
AD2d 525 (2nd Dept. 1994) which the family court found to be lacking here." Id. at 535.
The Fourth Department in Tony B., 41 AD3d 1242 (4th Dept. 2007), held that a
three-month-old child suffering a skull fracture did not establish prima facie case of child abuse.
Based upon this Court's careful consideration of counsels' oral arguments, current case law,
and all the papers submitted, including the mother's affidavit, her counsel's affirmation, the law
guardian's affirmation in support, and voluminous documentary evidence, this mother has
demonstrated a reasonable explanation for Myriam's skull fracture, which is consistent with an
accident, and thus, a defense to the abuse charges.
Where the moving party has demonstrated that it is entitled to summary judgment, the party
opposing the motion must demonstrate by admissible evidence the existence of a triable issue of
fact or tender an acceptable excuse for failing to do so, and the submission of a hearsay
affirmation by counsel alone does not satisfy this requirement." Zuckerman v. City of New
York, 49 NY2d 557 (1980).
ACS has submitted only an attorney affirmation in opposition to respondent's motion.
Notably, ACS has failed to file any affidavits of caseworkers and any affirmations of physicians
refuting this mother's documentary evidence, including the attending physician who claimed that
the lack of soft tissue swelling indicated that the injury was three to five days old and
inconsistent with this mother's explanation. ACS argues that summary judgment is not
appropriate because pursuant to FCA §165, the CPLR is only applicable where the method
of procedure in any family court proceeding is not prescribed. Since FCA §1051 directly
addresses the circumstances under which an Article 10 petition can be dismissed, the motion
brought under CPLR R. 3212(b) should be denied.ACS further argues that summary judgment
should be denied because there exists a triable issue of fact without citing one. ACS contends
that [*5]whenever they file a petition, they are entitled to a
hearing thereupon because summary judgement is not a vehicle available to parents. Notably,
during oral argument, ACS conceded that Myriam's injuries appear to be consistent with an
accidental fall and that after the filing of their petition, ACS conducted no further investigations
or medical consultations.
Lastly, ACS contends that even if the court were to accept the parents' explanation that
Myriam sustained the injuries from falling off the bed while in the mother' s care, there is a
triable issue as to whether she was neglectful in leaving the child unattended long enough for her
to sustain said injuries.
FCA §165(a) states in part . . .
"where the method of procedure in any procedure in which the family court has jurisdiction
is not prescribed by this act, the procedure shall be in accord with rules adopted by the
administrative board of judicial conference, or if none has been adopted, with the provisions of
the civil practice act to the extent they are suitable to the proceeding involved."
FCA §1051(c) states:

"If facts sufficient to sustain the petition under this article are not established, or if,
in a case of alleged neglect, the court concludes that its aid is not required on the record before it,
the court shall dismiss the petition and shall state on the record the grounds for the
dismissal."
This Court cannot find any statutory provisions or case law, and
none was cited, which precludes the use of summary judgment by parents, pursuant to CPLR R
3212, based upon the language of FCA§ 165. In fact, it is customary for ACS to move for
summary judgment for findings against parents, based upon criminal convictions.
Further, the Court of Appeals has established the appropriateness of summary judgments in
neglect and abuse proceedings in Suffolk County DSS v. James M., 83 NY2d 178
(1994). "Summary judgment is designed to expedite all civil cases by eliminating from the trial
calendar claims which can be properly resolved as a matter of law." Andre V. Pomeroy,
35 NY2d 361 (1974). "When there is no genuine issue to be resolved at trial, the case should be
summarily decided, and an unfounded reluctance to employ the remedy will only serve to swell
the trial
calendar and thus deny to other litigants the right to have their claims promptly
adjudicated." Id. at 364.
In the Matter of Julianne XX,
13 AD3d 1031 (3rd Dept. 2004), the respondent moved to dismiss a neglect petition for
failure to state a cause of action, and the Family Court, upon notice to the parties, converted
respondent's motion to one for summary judgment. Following the receipt of additional
submissions by the parties, the Family Court granted respondent's motion, except to the extent
that it found a question of fact as to the allegations of domestic violence. The Court held
"Preliminary, we note that although infrequently invoked, summary judgment is a permissible
procedural device in the context of family court article 10 neglect proceedings (see Matter of
Hannah UU., 300 AD2d 942 (3rd
Dept. 2002)." Id. at 1032. "Although we are mindful that we must view the evidence in
the light most favorable to the petitioner as the party opposing the motion, there is no evidence in
the record sufficient to raise a question of fact as to any of the issues upon which summary
judgment was granted." Id at 1032.
[*6]
The First Department in the Matter of Sara L.,
249 Ad2d 23 (1
st
 Dept. 1998), held that the Family Court erred when it denied the respondent's
motion for summary judgment, dismissing the petition. The Appellate Division held "in view of
the paucity of the allegation of neglect and abuse, contradicted by both the testimonial and
documentary evidence, summary judgment should have been granted and the petition dismissed."
Id at 23.
In the instant case, viewing the evidence in the light most favorable to ACS, this Court holds
that there is no triable issue of fact, as a matter of law, which would warrant a hearing. The
comprehensive affirmation by Dr. Molofsky, the chief of pediatric neurology at Beth Israel
Medical Center, states in his expert opinion, within a reasonable degree of medical certainty, this
mother's version of events explaining how Myriam was injured is consistent with her injury. An
expert's opinion must represent a reasonable degree of certainty, and must not be based on
supposition or speculation. People v. Donohue, 123 AD2d 77 (3rd Dept.
1987).Moreover, seven other expert physicians corroborate the findings and conclusions of Dr.
Molofsky. There were no other signs of trauma noted anywhere on the child's body nor did
Myriam's pediatrician, who has examined this seven-month-old infant more than nineteen times,
ever detect any signs of abuse or trauma. To the contrary, Dr. Feldman reported Myriam to be a
very healthy and well cared for child. ACS has failed to refute the experts' physical findings and
conclusions as well as the mother's reasonable explanation. ACS failed to submit an affirmation
with any expert opinions from the attending emergency room physician, upon whom they placed
great weight in filing these abuse charges.
Now, ACS seeks to try the mother on neglect charges. However, their petition does not
charge neglect nor cite the relevant statutory language. Further, their own FPP report states in
relevant part: Mrs. L. appears to be a loving and caring mother; there is no evidence of mental or
physical issues that affect her caring for the baby; there is no evidence of domestic violence or
substance abuse; and her home environment is favorable.
Accordingly, the respondent's motion for summary judgment is granted, the abuse petition is
dismissed, and ACS's supervision of her home is hereby terminated.
The foregoing constitutes the decision and Order of this Court.
Dated: Brooklyn, New York
November 9, 2007
E N T E R:
______________________________
Hon.
Bryanne A. Hamill
Judge of the Family Court
Footnotes

Footnote 1: Inasmuch as ACS withdrew its
petition against the respondent father, this decision only addresses the mother's motion.

Footnote 2: Pursuant to CPLR 2106 the
statement of a physician, osteopath or dentist, authorized by law to practice in the state, who is
not a party to the action, when subscribed and affirmed by him to be true under penalties of
perjury, may be served or filed in the action in lieu of and with the same force and effect as an
affidavit.